# FEDERAL DEFENDER SERVICES
## OF WISCONSIN, INC.
LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Joseph A. Bugni, Madison Supervisor
John W. Campion
Shelley M. Fite
Anderson M. Gansner
Gabriela A. Leija
Peter R. Moyers
Ronnie V. Murray
Tom E. Phillip
Joshua D. Uller
Kelly A. Welsh

517 East Wisconsin
Suite 182
Milwaukee, Wisconsin 53202

Telephone 414-221-9900
Facsimile 414-221-9901

November 7, 2018

Hon. J. P. Stadtmueller
United States District Court
for Eastern District of Wisconsin
517 E. Wisconsin Avenue
Milwaukee, WI 53202

RE:    *United States v. Karl James Schneider*
          Case No.  18-CR-24 (JPS)

Dear Judge Stadtmueller,

Withdrawal from heroin has been described as one of the most excruciating physical experiences one can undergo. The symptoms can be unbearable, including muscle and joint pain, physical and emotional fatigue, nausea, vomiting, diarrhea, depression, anxiety, tremors or seizures, chills, cold sweats, extreme hunger, suicidal thoughts, and more. It's beyond miserable. And all throughout these symptoms persists a guttural craving for relief, and there's only one thing that can grant that relief: more heroin. It was this craving for relief that led a 31-year-old father, high school graduate and delivery driver with no criminal record to participate in seven armed robberies in a matter of days.

This case is another example of the devastating effect the opioid epidemic has had, not just on individual users, but on the entire community. Deep in the trenches of addiction, Mr. Schneider and his companions took extreme, unthinkable risks for money to buy heroin. Their crimes were unsophisticated—no mask, no gloves, no real planning was involved. After each incident, the trio would immediately use their meager proceeds to buy themselves a few doses to share to relieve them (temporarily) from their dope

Honorable J. P. Stadtmueller
November 7, 2018
Page 2

sickness. Thankfully, no one was physically hurt, and the total sum of money taken was relatively small. In the end, all the robberies combined yielded a mere $1500. Mr. Schneider has now accepted responsibility by pleading guilty, and Your Honor is tasked with determining an appropriate sentence.

This case is exceptional because Mr. Schneider has no prior record, and has been a hard-working, upstanding citizen his whole life leading up to this case. Though his actions are serious and warrant a firm response, Mr. Schneider and this case present mitigating characteristics which warrant a sentence below the guidelines. Taking into account Mr. Schneider's clean record, his mitigated role in these offenses, his lifelong track record of employment and pro-social behavior, his immediate acceptance of responsibility and cooperation with law enforcement, and his promising rehabilitative outlook, the defense respectfully asks this Court to impose 12 months on each robbery count, concurrent with each other, and consecutive to the mandatory 84-month minimum, for a total sentence of 96 months. This is a substantial sentence that accounts for Mr. Schneider's conduct, yet is no more than necessary, particularly in light of this being his very first sentence.

Before this case, Mr. Schneider had lived a stable life and was a productive member of society. He graduated high school near the top quarter of his class. He's worked consistently since then; for seven years as an auto glass technician, and for the past three as a driver for Diamond Freight. His former employers praise him for his work ethic, and his most recent employer describes him as a "good worker" whom they would even consider for rehire. PSR at 113.

He's a committed father who co-parents with his daughter's mother, Brandi Bacon, with whom he has positive relationship even though they are separated. Ms. Bacon describes him as great father who always makes time for his daughter, Aydabelle. Others similarly describe him as a committed father, and as a person who would go out of his way to help those he cares about.

He has a wealth of support in the community, as will be shown by the attendance at his hearing. As this case was progressing, more than a dozen citizens submitted letters on

Mr. Schneider's behalf in support of his pretrial release. Those letters are attached,[1] and they paint a far more complete picture of Karl beyond the conduct he's accepted responsibility for. Everyone who knows him has been stunned to hear what has happened, as this is entirely inconsistent with the Karl they've learned to know and love. A recurring sentiment among those who know him is that they wish they had known about his struggles earlier so that they might have been able to help him or intervene before it came to this. Nonetheless, they are all sticking by his side, and their loyalty to him speaks volumes about Mr. Schneider's demonstrated character.

Mr. Schneider's addiction started like many before him: with prescription painkillers. He may have also been predisposed to addictive behaviors, as Mr. Schneider's father struggled with alcohol, and research has shown that children with an addictive parent are more prone to addiction themselves. For Mr. Schneider's part, he gradually became addicted to the pain medication, and eventually turned to heroin. This is when things spiraled out of control.

In late 2017, Mr. Schneider, Rodriguez and Kimchik were deep into their addiction. It had taken over their lives. Every single day turned into a search for drugs. Eventually, Mr. Schneider lost his job and no longer had an income. But the addiction persisted, and so did the cravings. With no criminal record—not even an arrest—Mr. Schneider made an incredibly unfortunate decision to risk it all for another fix.

He had no idea how serious his conduct was, or how deep he had gotten himself in. He was not thinking rationally. His focus was on the immediate relief that another dose of heroin would provide. He knew he needed help, so he planned to check himself into rehab and had made arrangements to do so. But he was arrested just days before he was to be admitted to inpatient treatment. Once he was caught, he promptly admitted to his crimes, and later provided a thorough confession.

He's been in custody now for more than nine months, and has had time to sober up and reflect on what he's done. This case, tragic as it may be, has provided a much-needed intervention—one that may have saved him from an outcome far worse than prison. He is extremely remorseful, and sympathetic to the victims who have been traumatized by

---

[1] In addition to the attached character letters, three people have asked to address the Court personally at Mr. Schneider's sentencing hearing: his mother, Lynn Schneider, his brother, Bryan Schneider, and his daughter's mother, Brandi Bacon.

Honorable J. P. Stadtmueller
November 7, 2018
Page 4


his actions. This case has been a life-changing event for him—one he has learned valuable lessons from and will never forget.

But while he must be held accountable for his actions, extending his prison term beyond eight years is not necessary to meet the sentencing objectives. Mr. Schneider presents several positive factors that bode well for his reintegration prospects, and mitigate against the need to keep him incarcerated for a longer term.

First, his odds of reoffending are low. Offenders with zero criminal history points, like Mr. Schneider, are the least likely of federal offenders to recidivate. *See* U.S. Sentencing Commission, *The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders* at 6 (2017).[2] Also among those factors showing promise for his rehabilitation are: his high school completion, his record of consistent, gainful employment, and his strong network of community support, consisting of friends and family who are personally invested in seeing Mr. Schneider succeed. These factors make an extended prison term unnecessary, because they will promote his successful rehabilitation upon release.

Lengthening already-substantial prison sentences has not been shown to advance deterrence. Additionally, prison is expensive and yields diminishing returns. At a certain point, the cost of prison far outweighs any marginal societal benefit that incrementally lengthening a sentence may provide. Recent figures estimate that taxpayers pay more than $30,000 per year to house and feed a federal inmate. The $1500 taken here seems minuscule when compared to how much it will cost the public to imprison Mr. Schneider and his companions for several years. In short, a prison sentence beyond eight years would not be cost effective, and could ultimately be counterproductive for his reintegration prospects.

Although this has been a life-changing experience for all involved, Mr. Schneider will land on his feet. He has employment opportunities available to him upon his release, and a family who will be waiting anxiously to welcome him home—especially his daughter, who will now miss her father's presence and support for the foreseeable future.

---

[2] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/researchpublications/2017/20170309_Recidivism-CH.pdf.

While it is necessary to account for the seriousness of his conduct, it is also important to temper the need to punish against to ultimate goal of returning Mr. Schneider to the community in the best position to succeed. Our recommendation strikes that balance. Eight years in federal prison for a first-time offender is no small punishment, and a term of supervised release will go a long way toward ensuring rehabilitation and continued sobriety so that he never again finds himself in this position.

For all of these reasons, we ask the Court to impose a total sentence of 96 months: 84 months on the § 924(c) count, followed by one year on each robbery count, concurrent. Such a sentence is sufficient but no greater than necessary to meet § 3553(a)'s sentencing objectives.

Sincerely,


*s/Ronnie V. Murray*
Ronnie V. Murray

RVM/lc